FILED 7 FEB '17 14:31USDC-ORP

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>Alfred Darrell Warren<br><br>*Defendant(s)* | )<br>)<br>) Case No. **'17-MJ-11-**<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 16, 2016__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1)<br>18 U.S.C. § 751 | unlawful possession with intent to distribute controlled substances, specifically heroin, and escape. |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Jefferey D. McGuire, Task Force Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Feb 7, 2017**

_____
*Judge's signature*

City and state: __Portland, Oregon__  Stacie F. Beckerman, U.S. Magistrage Judge
*Printed name and title*

STATE OF OREGON            )
                           )    AFFIDAVIT OF JEFFREY D. McGUIRE
County of Multnomah        )

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Jeffrey D. McGuire, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.       I am a Task Force Officer (TFO) employed by the Portland Police Bureau (PPB) assigned to the Drug and Vice Division. I have been a sworn police officer for the Portland Police Bureau (PPB) for seventeen years. For the past eleven years I have been assigned as a narcotics investigator, which includes the investigation of violations of Title 21, United States Code, Sections 813 and 846. As part of my training, I attended the State of Oregon Department of Public Safety Standards and Training Basic Police Academy, Portland Police Bureau Advanced Academy, and currently hold a Police Officer Basic, Intermediate, and Advanced certification through the Oregon Department of Public Safety Standards and Training. I attended the Portland Police Bureau's Advanced Training and received DPSST training in the area of illicit controlled substance recognition and identification. I have also attended the following training courses: Basic Drug Investigation; Vice Investigations; Practical and Legal Issues for Interdiction Teams; DEA Operation Pipeline-Highway Drug Interdiction Training; DEA Operation Jetway-Criminal Interdiction Training; DEA's Drug Identification and Field Testing; Reid and Associates Street Crimes and Surveillance Techniques; Multijurisdictional Counterdrug Task Force Training-Clandestine Laboratory Investigations; Multijurisdictional Counterdrug Task Force Training-Domestic Drug Interdiction; Network Environmental Systems, Inc.-Clandestine Laboratory Safety Certification Program. I have also received training from the Multnomah County District Attorney's Office on search and seizure laws, related to narcotics investigations. I have received

in-service training in the following areas: the laws and the procedures in working with confidential reliable informants and the legal procedures regarding the chain of evidence;

2. I have personally been involved in over one hundred (100) investigations involving violations of both federal and Oregon Controlled Substances laws. In the course of these investigations I have purchased controlled substances, observed how drug dealers operate, participated in search warrants executed on drug dealer's residences, interviewed people who have used, possessed, delivered, and manufactured controlled substances, confiscated controlled substances, field tested controlled substances, and submitted controlled substances to the Oregon State Police Crime Lab for laboratory testing. The Oregon State Police Crime Lab then confirmed that the controlled substances tested positive for the suspected controlled substance(s) for which I believed them to be when they were confiscated;

3. I submit this affidavit in support of an application for: a criminal complaint charging Alfred Darrell WARREN with: possession with intent to distribute controlled substances, specifically heroin, in violation of Title 21, United States Code, Section 841; escape, in violation of Title 18, United States Code, Section 751, and a warrant for WARREN's arrest.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

<u>Statement of Probable Cause</u>

**Page 2 – Affidavit of TFO Jeffrey D. McGuire**

5.  On August 16, 2016 at approximately 3:45 p.m., I went to Portland Adventist Medical Center, 10123 SE Market Street, to investigate the suspected Oxycodone overdose of G.M. I learned from Sergeant C. Kenagy of the Portland Police Bureau's Drugs and Vice Division that Gresham Police officers responded to G.M.'s overdose the night before (August 15, 2016). G.M. was transported to Portland Adventist Medical Center for treatment and was in the intensive care unit.

6.  I arrived at Portland Adventist Medical Center and met with Officer T. Thurman of the Portland Police Bureau's Drugs and Vice Division. Officer T. Thurman told me that when she arrived at the hospital, she spoke to G.M.'s father, C.E. C.E., told Officer T. Thurman that G.M.'s cousin, J.M., had given C.E. two (2) green Oxycodone pills that J.M. believed were the same kind of pills that G.M. may have taken, causing G.M.'s overdose.

7.  During the course of this investigation, I identified C.M.[1] as a source of supply for the green Oxycodone pills I believe G.M. took.

8.  On August 18, 2016, I spoke with C.M. in front of C.M.'s house. C.M. acknowledged that C.M. sold Oxycodone pills to G.M. and identified C.M.'s source of supply for Oxycodone as "Terrell WARREN" with the cellular telephone number 971-388-1854.

9.  Officer T. Thurman researched the name Terrell WARREN with cellphone number 971-388-1854. Based on that research, Officer T. Thurman showed C.M. an Oregon driver's license photograph of Alfred Darrell WARREN, DOB: XX-XX-1973. C.M. positively identified Alfred Darrell WARREN as the "Terrell WARREN" from whom C.M. purchased Oxycodone pills. They were the same Oxycodone pills that C.M. sold to G.M. on August 15, 2016.

---

[1] C.M. has approximately twenty felony convictions for possession or possession with intent to distribute controlled substances. C.M. also has convictions for Robbery in the 3rd Degree, Theft in the 3rd Degree, misdemeanor firearms possession and Assault in the 4th Degree. C.M. was not promised anything in exchange for the information he gave me.

**Page 3 – Affidavit of TFO Jeffrey D. McGuire**

10. C.M. told me C.M. met with J.M. and G.M., in a parking lot at SE 162nd Avenue and E Burnside Street and received $300 for twenty (20) 15mg Oxycodone pills. C.M. then drove to the Ross Dress For Less, 16339 SE Division Street, where C.M. met with WARREN. C.M. gave WARREN the $300 and WARREN gave C.M. the twenty (20) Oxycodone pills in a blue balloon. C.M. then called J.M. and G.M. and told them to meet C.M. at the Ross Dress For Less. When they arrived, C.M. gave them the twenty (20) Oxycodone pills.

11. C.M. told me C.M. had been getting C.M.'s Oxycodone pills from WARREN for the previous few weeks and that C.M. normally purchases ten (10) Oxycodone pills at a time.

12. On August 18, 2016, at my direction, C.M. called WARREN at 971-388-1854 and ordered ten (10) Oxycodone pills. The two agreed to do a deal that day but the deal fell through because WARREN could not get into the place where the pills were stored. C.M. and WARREN planned to do the deal the following day.

13. On August 19, 2016 at approximately 11:19 a.m., I met with C.M. Through a series of calls, C.M. and WARREN agreed to do a ten (10) Oxycodone pill deal. The plan was for WARREN to meet C.M. at Dotty's, 16339 SE Division Street, the same parking lot as Ross Dress For Less.

14. At approximately 11:55 a.m., C.M. got a telephone call from WARREN asking C.M. where C.M. was. I listened as C.M. told WARREN that C.M. was inside Dotty's. At the same time, members of the surveillance team saw a male black, who matched the description of Alfred Darrell WARREN standing in front of Dotty's talking on a cellphone. Moments earlier, the man was seen getting out of a 2002 black Land Rover with Oregon license plate 984EGC, and walking towards Dotty's. Surveillance officers also saw a second male black in the driver's seat of the Land Rover.

Page 4 – Affidavit of TFO Jeffrey D. McGuire

15. I drove C.M. by the male black as he walked south in the parking lot towards the black Land Rover. C.M. immediately identified the male black as WARREN, and the same person who agreed to meet C.M. at that location and sell C.M. ten (10) Oxycodone pills. C.M.'s view of WARREN was clear and unobstructed. I instructed surveillance officers to take the occupants of the black Land Rover into custody.

16. Members of the surveillance team made contact with the occupants of the black Land Rover, identified as Alfred Darrell WARREN and T.C., and placed them in custody. Officer T. Thurman later told me WARREN had a pill bottle in his right front pants pocket that contained ten (10) green 15mg Oxycodone pills. WARREN and T.C. were then transported to the Portland Police Bureau's East Precinct.

17. Once at East Precinct, I inspected the amber-colored prescription pill bottle seized from WARREN. The bottle appeared worn and the label had been tampered with. The bottle contained what appeared to be ten (10) green 15mg Oxycodone pills. These pills were identical in size, color and shape to the pills the father of the decedent, C.E., had given us.

18. In January 31, 2017, I conferred with Deputy United States Marshal Jordan Bury. Deputy Jordan Bury provided me with documentation and information that showed the following: in August 2016, WARREN was serving a sixty-month sentence with the Bureau of Prisons stemming from a conviction for possession of a firearm during and in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). On May 25, 2016, as part of his sentence, WARREN was released to a residential reentry center in Portland, where he was required to live, and was living, until August 19, 2016. On August 19, 2016, the United States Marshals received notice from the Residential Reentry Center that while WARREN was out on work-release, he was arrested and booked into the Multnomah County Jail on drug-related charges. Multnomah County

Page 5 – Affidavit of TFO Jeffrey D. McGuire

released WARREN the same day, August 19, 2016, and WARREN did not return to the Residential Reentry Center. WARREN was placed on escape status by the Residential Reentry Manager. As of the date of this writing, WARREN is still at large.

19. On February 2, 2017, I conducted a test using a field narcotics test kit on one (1) of the green pills seized from WARREN at the time of his arrest. The field narcotics test displayed a presumptively positive reading for heroin.

## Conclusion

20. Based on the foregoing, I request that the Court issue a criminal complaint charging Alfred Darrell WARREN with: possession with intent to distribute heroin; and escape; and issue a warrant for WARREN's arrest.

21. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Benjamin Tolkoff, and AUSA Tolkoff advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

//

## Request for Sealing

22.	I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may alert others, causing them to destroy evidence, flee the jurisdiction, and potentially harm or intimidate the government's cooperating witnesses. Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

Jeffrey D. McGuire
HSI Task Force Officer
PPB, DVD

Subscribed and sworn to before me this 7th day of February 2017.

Honorable Stacie Beckerman
United States Magistrate Judge

Page 7 – Affidavit of TFO Jeffrey D. McGuire